## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **AYINDE MOHN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-460-TCK-TLW** |
| | ) | |
| **SALLY JEWELL, Secretary of the Interior** | ) | |
| **1849 C. Street N.W.** | ) | |
| **Washington, D.C. 20240,** | ) | |
| | ) | |
| **MIKE CONNER, Assistant Secretary of** | ) | |
| **the Interior – Indian Affairs** | ) | |
| **1849 C Street N.W.** | ) | |
| **Washington, D.C. 20240, and** | ) | |
| | ) | |
| **JACOB J. LEW, Secretary of the Treasury** | ) | |
| **1800 Pennsylvania Avenue N.W.** | ) | |
| **Washington, D.C. 20220,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Complaint (Doc. 2); Plaintiff's Motion for Leave to Proceed

*In Forma Pauperis* and Supporting Affidavit (Doc. 3); and Plaintiff's Motion for Leave to Amend

Complaint, which includes Plaintiff's proposed Amended Complaint as an attachment (Doc. 4).[1]

**I.      Motion for Leave to Proceed IFP**

      **A.      Standard**

Plaintiff seeks to commence this action without prepayment of fees pursuant to 28 U.S.C.

§ 1915(a)(1), which provides that "any court of the United States may authorize the commencement,

---

[1]  In addition to this action, Plaintiff has filed numerous other *pro se* cases in the Eastern District of Oklahoma. (*See, e.g.,* 16-CV-291-RAW, 16-CV-292-RAW, 16-CV-293-RAW, 16-CV-310-RAW.)

prosecution or defense of any suit . . . without prepayment of fees . . .  by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees. . . ."  Despite use of the word "prisoner," this statute applies to all persons applying for *in forma pauperis* status.  *Brown v. Eppler*, 725 F.3d 1221, 1229 n.6 (10th Cir. 2013).

This statute "is designed to ensure that indigent litigants have meaningful access to the federal courts."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  "Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  *Id.* In order to prevent such abusive or captious litigation, the statute authorizes federal courts to *sua sponte* dismiss a case filed *in forma pauperis* if: (1) the allegation of poverty is untrue, (2) the action is frivolous or malicious, (3) the action fails to state a claim upon which relief may be granted, or (4) the action seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); *see also Stafford v. United States*, 208 F.3d 1177, 1179 n.4 (10th Cir. 2000) (describing § 1915(e)(2) as a "screening procedure" for dismissing IFP claims that are frivolous, that fail to state a claim, that seek monetary relief from immune defendants, or that rest on false allegations of poverty).  Dismissals based on § 1915(e)(2) are often made *sua sponte* prior to the issuance of process "so as to spare prospective defendants the inconvenience and expense of answering such complaints."  *Neitzke*, 490 U.S. at 324.[2]

---

[2]  The Court in *Neitzke* addressed the precursor to 28 U.S.C. § 1915(e)(2), which was 28 U.S.C. § 1915(d).  However, the Tenth Circuit has cited *Neitzke* as setting forth the policy considerations underlying § 1915(e)(2).  *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).

**B.      Facts**

Plaintiff is proceeding *pro se*, and the Court therefore construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).  Plaintiff's original complaint named only Craig County as a Defendant.  Plaintiff then filed a Motion for Leave to Amend requesting to substitute an Amended Complaint naming three new defendants and omitting Craig County as a defendant.  Were the case to proceed, the Court would grant leave to amend.  Accordingly, for purposes of its § 1915(e)(2) analysis, the Court examines the allegations in the proposed Amended Complaint and its attachments appearing at pages 4-85 of the Motion for Leave to Amend Complaint (Doc. 4).  The following facts are either set forth in Plaintiff's proposed Amended Complaint and attachments thereto, or set forth in court documents of which the Court takes judicial notice.

The class action lawsuit of *Cobell v. Salazar*, 96-CV-1285 (D.D.C.), settled in 2009 pursuant to a court-approved settlement known as the Indian Trust Settlement ("ITS").  The ITS website explains that it settles class claims alleging the federal government violated trust duties to individual Indian trust beneficiaries by failing to provide proper accountings, mismanaging Individual Indian Money ("IIM") accounts, and mismanaging land and other resources. http://www.indiantrust.com/faq.  Class members include Indians who had an IIM account anytime from January 1985-September 30, 2009 or who had an individual interest in land held in trust or restricted status by the U.S. Government as of September 30, 2009.  *Id.*  The class also includes the estate of a deceased Indian with these interests.  *Id.*  The class notice provides that a person may be part of the settlement if he is (1) an IIM account holder, (2) an Individual Indian who has or had an

3

ownership interest in land held in restricted status, or (3) an heir to a deceased IIM account holder or individual Indian land owner. *See* http://www.indiantrust.com/docs/notice.pdf.

By the deadline of March 30, 2013, Plaintiff submitted an ITS claim form asserting that he was the third type of class member - an heir to a deceased IIM account holder or individual Indian who owned restricted lands. Plaintiff's submission was assigned Claim Number 00332330. By letter dated May 1, 2013, Plaintiff was informed that his claim was not eligible and that he had until July 1, 2013 to submit proof of a deceased individual's qualification as a class member and proof of Plaintiff's inheritance of these rights. (Doc. 4 at 52.)

Quickly thereafter, Plaintiff applied for a Certificate of Degree of Indian Blood ("CDIB") with the Bureau of Indian Affairs ("BIA"). On August 16, 2013, a Deputy Tribal Governance Officer of the BIA denied the application because the four maternal ancestors Plaintiff identified – Anderson Reese, James Reese, Besty Reese, and Jessie Reese ("Reese relatives") – were listed on the Cherokee Freedmen Roll "without a blood degree." Thus, Plaintiff was "unable to verify direct lineage to an enrollee who is listed with a blood degree . . . ." (Doc. 4 at 50.)

Plaintiff appealed this decision to the BIA Regional Director, as directed by the denial letter. By a lengthier letter incorrectly date-stamped January 6, 2013,[3] the BIA Regional Director affirmed the denial for the same reasons, concluding that the Reese relatives "are listed on the Final Rolls without an Indian blood degree." (Doc. 4 at 48.) The Regional Director further explained:

---

[3] The "background" section of this letter setting forth the sequence of events makes clear that the letter could not have been sent on January 6, 2013. It appears the letter should have been dated January 6, 2014.

> When the Final Rolls of [the Five Civilized Tribes] were prepared in 1906, separate rolls were made of the Freedmen and Intermarried Whites and both groups are shown with no blood degree.  CDIBs are not issued to these groups because they possess no Indian blood degree.

(Doc. 4 at 4.)  Plaintiff did not become an ITS class member or a representative of an ITS class member and has not received any payments from the ITS.

On June 1, 2014, Plaintiff entered into a contract with Curia Document Solutions, LLC ("Curia") for "litigation support services to [Plaintiff] in preparation for the attached Complaint and all indirectly related complaints." (Doc. 4 at 56.)  Plaintiff attached a declaration from a Curia representative stating that Curia "designed, implemented and continues to maintain a Federal Indian law and Cherokee ancestry database of the full blood Cherokee relatives of Abiodun Mohn, conclusively confirmed by the following National Archives materials . . . ." (Doc. 4 at 56.)  Curia provided Plaintiff with Cherokee Nation archived records ranging in date from 1880 to 1908 ("Records").  These Records appear to form the basis for Plaintiffs' claims in this lawsuit and several others pending in the United States District Court for the Eastern District of Oklahoma.

The Court has spent considerable time examining the Records.  For purposes of this analysis, the Court assumes the Records are authentic and construes them favorably to Plaintiff.  The Records show that an individual named "Seely Rowe" appeared on page 169 of an 1880 "Census."  The column labeled "native or adopted" designates that Seely Rowe was "native."  The column marked "Race or Prior Nationality" designates that Seely Rowe was "Cherokee."  The column marked "age" indicates that Seely Rowe was four.

By May 6, 1901, the girl named Seely Rowe was 25 years of age, had married Silas Hardrick ("Silas"), and went by the name of Celia Hardrick ("Celia").  On May 6, 1901, Celia appeared and testified before the Department of the Interior ("DOI"), along with her step-grandfather Peter Williams, regarding her application for enrollment of herself, her husband, and five children as Cherokee Freedmen.  (*See* Doc. 4 at 66.)[4]  During this questioning, Celia stated:

> Commission: You are put down on the roll of 1880 as a native Cherokee?
> A: Yes, sir, down Williams on the 1880 roll, in the Cooweescoowee district.
> Q: But you state you are a daughter of this Rosa Williams and your mother is a colored woman?
> A. Yes, sir.
> Q: You don't claim therefore as a Cherokee?
> A: No, sir, as a Freedmen.

(Doc. 4 at 67.)  The Commissioner concluded:

> Commissioner: The applicant applies for the enrollment of herself, her husband and five children. She is duly identified on the roll of 1880, but not upon the Kerns-Clifton roll or upon the census roll of 1896. It appears, however, that she has lived in the Cherokee Nation all her life, and no significant reason is seen why she is omitted from the two rolls last named.  Her change of name arising from marriage is established in a satisfactory manner by her own and her step-grandfather's testimony. *She will now be listed for enrollment as a Cherokee Freedmen. She is identified on the roll of 1880 as a native Cherokee, but she states that her classification as to nationality is wrong. Her mother has just been enrolled and is identified on the roll of 1880 as a Cherokee Freedman.*
> 
> The five children named in the testimony are not upon any roll, but are said to be all living at this time. *The applicant is desired to supply the Commission with certificates of their birth, and these five children will be listed for enrollment as Cherokee Freedmen.*  It is shown by satisfactory testimony that the marriage between the applicant and her husband is a legal marriage.

---

[4]  The transcript of these proceedings is set forth at pages 64, 66, and 67 of Document 4 in this Court's record. Page 65 of Document 4 is an extra page.

As for her husband, Silas Hodrick, he is identified on the Kerns-Clifton roll, but not upon the roll of 1896 or upon that of 1986??. He did not marry his wife under Cherokee license and hence no claim is made for him as an intermarried citizen. Neither his father nor mother are identified on the roll of 1880, though his father at least was living at the time that roll was made. To await further evidence in regard to the rights of the applicant's husband, under the treaty of 1866, if such evidence can be presented, he will now be listed for enrollment as Cherokee Freedman on a doubtful card.

(Doc. 4 at 67 (emphases added).)  On May 6, 1901, Celia and her five children – Perry, James, Julia, Rosa, and Lewis ("Children") – were issued Dawes Roll Nos. 1751-1756 on a document entitled "Cherokee Nation. Freedmen Roll."  (Doc. 4 at 62.)  Celia and the children are collectively referred to as the Hardricks.

On March 10 and April 19, 1903, Silas submitted Applications for Allotment and Homestead for Celia and the Children.  (Doc. 4 at 81, 82.)  On March 20 and 28 and 31, 1908, the U.S. Department of the Interior ("DOI") granted allotments to James, Perry, Julia, and Rosa.  (Doc. 4 at 81, 82.)  Plaintiff also provided as exhibits certain "Registry Return Receipts," the significance of which is not clear to the Court.  (Doc. 4 at 68-79.)  Construed favorably, neither the allegations in Plaintiff's proposed Amended Complaint nor the Records attached thereto provide a link from Plaintiff to the Hardricks.  Plaintiff, in fact, crossed out an averment that he was an heir to the Hardricks.  (Doc. 4 at 24, ¶ 26.)

**C.    Claims**

In the proposed Amended Complaint, Plaintiff seeks to sue Sally Jewell, Secretary of the Interior; Mike Conner, Assistant Secretary of the Interior; and Jacob Lew, Secretary of the Treasury ("Defendants").  Plaintiff's complaint is entitled "Complaint to Compel Performance of Trust

7

Obligations." Plaintiff seeks to "redress gross breaches of trust" by the United States, acting through Defendants, with respect to IIM accounts of Plaintiff, Celia, and the Children. Plaintiff avers Celia and the Children "were all full blood enrolled citizens of the Cherokee Nation of Oklahoma" and that Plaintiff himself is also an "enrolled member of the Cherokee Nation of Oklahoma." (Doc. 4 at 11.) He alleges that Defendants have mismanaged funds and breached trust obligations related to their IIM accounts, which contain "income derived from their respective land allotments." (Doc. 4 at 16.) (Doc. 4 at 17)

In "Count One," Plaintiff seeks a mandamus order to compel Defendants to perform their trust duties. In "Count Two," Plaintiff alleges that he has suffered legal wrong and is aggrieved. (Doc. 4 at 31-32.) As specific relief, Plaintiff seeks (1) a decree construing the trust obligations to Plaintiff, Celia, and the Children; (2) a decree restraining Defendants from interfering with the "Special Trustee:" (3) a decree ordering an accounting of the IIM accounts of Celia, the Children and himself; (4) a decree ordering Defendants to issue "full-blood Certificates of Degree of Indian Blood" in the name of Celia, the Children, and himself; and (6) an award of his costs of obtaining Curia's litigation support services. (Doc. 4 at 32-33.)

### D.      Analysis

*Sua sponte* dismissal is proper in this case because Plaintiff lacks standing and/or fails to state a claim upon which relief can be granted. Defendants, all federal actors, should be spared the inconvenience and expense of answering the proposed Amended Complaint.

First, Plaintiff has failed to adequately allege facts demonstrating that he would be entitled to any compensation or relief as an heir of the Hardricks and has therefore failed to allege a personal

stake in the controversy.  Plaintiff crossed through the averment in his Complaint that he was "an eligible heir" to the Hardricks, indicating Plaintiff knows this to be untrue.  Plaintiff sought CDIB cards based on the Reese relatives, which the BIA rejected.  Plaintiff has failed to allege any connection between Plaintiff and the Hardricks, or the Reese relatives and the Hardricks.  The Court is perplexed by Paragraphs 49(a) and 50 in conjunction with Paragraph 51 of the proposed Amended Complaint, which provide:

> 49.  Plaintiff Mohn declares he submitted the following documents in response to the above correspondence:
>> a.      2013-2014 BIA correspondence mailed to Plaintiff Mohn confirming Plaintiff Mohn's direct lineal grandparents as Anderson Reese, James Reese, Betsy Reese, and Jesse Reese as Cherokee Freedmen.  See Exhibit 1.
> 50.     Plaintiff Mohn avers he telephoned Indian Trust Settlement in October of 2013, to check the status of his application, and was told, "he was denied, because the allotments of his direct lineal grandparents were not restricted."
> 51.     Plaintiff Mohn avers the congressional authorities listed below confirm Celia Hardrick, Perry Hardrick, James Hardrick, Rosa Hardrick, Julia Hardrick, Lewis Hardrick's allotments were, in fact, decreed to be restricted . . . .

(Doc. 4 at 33-34.)  There is a complete disconnect between the BIA correspondence regarding the Reese relatives and the land allotments to the Hardricks.  If there is a connection, that connection is not adequately alleged or shown in the documents attached to the proposed Amended Complaint. Plaintiff does not allege to be a legal representative of the Hardricks' estate, has not stated a plausible claim that he is a descendant or heir of the Hardricks, and therefore lacks standing to pursue the alleged claims.  *See Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 110 (D.D.C. 2016) (holding that descendant of former slave held by Cherokee Nation lacked Article III standing because (1) plaintiff did not claim to be suing as legal representative of estate, (2) plaintiff could not

9

show ancestry based merely on being a descendant, and (3) the records she submitted did not provide a clear connection to plaintiff or "indicate the existence of any property interest in allotted land.").[5]

Second, Plaintiff's proposed Amended Complaint is patterned after the *Cobell* class-action complaint and raises the same claims related to mismanagement of IIM accounts and trust lands. However, Plaintiff was deemed ineligible to be a class member. This further indicates that he lacks standing to pursue claims in this lawsuit and lacks any personal financial interest in the outcome. Further, even if and to the extent Plaintiff would have qualified as a class member based on the Hardricks' land ownership, which appears to be a new basis for his entitlement to relief, Plaintiff did not "opt out" of the settlement and preserve his claims. *See* http://www.cobellsettlement.com/important (opt-out date of April 20, 2011 for Trust Administration Class).

Third, assuming Plaintiff had adequately alleged he was heir to the Hardricks and that he could make claims on behalf of their estates that are identical to claims already settled in the *Cobell* class action, Plaintiff's claims still fail on the merits. Plaintiff's attachments to his proposed Amended Complaint - namely, the Records - demonstrate that the Hardricks appear only on the Cherokee Freedmen roll and lack a degree of Indian blood. In her testimony before the DOI, Celia clarified that she and her children sought only to be included on the rolls as Freedmen. Thus, like

---

[5] The only possible link is the Curia representative's statement that she prepared a database of Plaintiff's Cherokee ancestors. However, there is no averment or statement anywhere in Plaintiff's documents as to how he is related to the Hardricks, and Plaintiff crossed through a former allegation that he was an heir to the Hardricks.

the Reese relatives, the Hardricks' appearance on the Cherokee Freedmen roll does not entitle Plaintiff to a CDIB or to the relief he seeks here.   Assuming Plaintiff is attempting to argue Freedmen were wrongfully excluded from the ITS, similar claims have been rejected.  *See Harvest Freedmen Federation, LLC v. United States*, 478 F. App'x 322, at *1 (6th Cir. July 3, 2012) (dismissing claim that congressional act implementing ITS was unconstitutional because it perpetuated racial discrimination against Freedmen by excluding them as class members).

Finally, although Plaintiff alleges to have an IIM account in his own name, this is implausible and belied by Plaintiff's submissions.  After his claim was denied in the *Cobell* action, Plaintiff attempted to get the necessary proof to resubmit a claim.   However, the BIA twice concluded Plaintiff's maternal Reese relatives lacked the necessary Indian blood to qualify him for a CDIB because they were on the Freedmen rolls.  If Plaintiff had his own IIM account, he could have submitted a claim on that basis without regard to his ancestors.

In sum, Plaintiff failed to allege an adequate financial interest or personal stake in the controversy based on his relation to the Hardricks.  Based on the sequence of events, it is entirely implausible that Plaintiff has an IIM account in his name or that he has a stake in the controversy based on such account.  Therefore, Plaintiff lacks Article III standing, and his claims are subject to dismissal pursuant to Rule 12(b)(2).  Even assuming standing could be shown, Plaintiff cannot state any claim for relief under Rule 12(b)(6) because the Hardricks are Cherokee Freedmen lacking an Indian blood degree.  Further, courts have rejected claims that similar trust duties were owed to Freedmen and/or that the ITS settlement was discriminatory.

11

**II.      Conclusion**

Construing the allegations and evidence attached to Plaintiff's proposed Amended Complaint, the Court finds that the proposed Amended Complaint fails to state a claim for relief and therefore *sua sponte* dismisses the matter with prejudice.  Therefore, Plaintiffs' Motion for Leave to Proceed *In Forma Pauperis* (Doc. 3) is denied, and the matter is dismissed with prejudice. Because the Court will not permit the case to proceed, any other pending motions are denied as moot.

**SO ORDERED this 13th day of December, 2016.**

**TERENCE C. KERN**
**United States District Judge**

12